# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDENILSON ANTONIO CUATETE-HERNANDEZ,<br><br>                      Petitioner,<br>   vs.<br><br>JOHN WILLIAMS, et al.,<br><br>                      Respondents. | CASE NO. 11CV267 DMS (JMA)<br><br>**ORDER GRANTING PETITIONER'S FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |

      Pending before the Court is Petitioner's First Amended Petition ("FAP") for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. For the following reasons, Petitioner's writ of habeas corpus is granted and a conditional writ of habeas corpus is issued.

## I.
## BACKGROUND

      Petitioner was born in El Salvador in 1978 and came to the United States in 1981. (FAP at 2.) He adjusted his status to that of Legal Permanent Resident in 1991. (*Id.*; Return Ex. 1 at 17, Ex. 2 at 22.) After sustaining criminal convictions, Petitioner was taken into immigration custody on October 9, 2007. (FAP at 2) On April 16, 2008, Petitioner was ordered removed to El Salvador by an immigration judge ("IJ"). (*Id.* at 3; Return Ex. 8.) He appealed the order of removal and the Board of Immigration Appeals ("BIA") affirmed the IJ's decision on July 28, 2008. (FAP at 3; Return Ex. 9.) The Ninth Circuit also dismissed his petition for review. (Return Ex. 10.)

1         On October 9, 2008, while the Ninth Circuit was considering his petition for review, Petitioner
2 was given a bond hearing in immigration court. The attorney for the Department of Homeland
3 Security moved for Petitioner to be released on bond in the amount of $25,000, to which the IJ and
4 Petitioner agreed. (Return Ex. 13.) Petitioner argues the IJ never made any factual findings, nor
5 stated it was placing any sort of burden on the Government. On November 14, 2008, Petitioner filed
6 a motion for redetermination of bond, the hearing on which was repeatedly continued until March 26,
7 2009. By that time, Petitioner's initial petition for direct review of his removal order had been
8 dismissed by the Ninth Circuit and the IJ ruled he did not have the authority to hold a new bond
9 hearing. (FAP Ex. A.) Petitioner filed a subsequent motion for a bond redetermination hearing on
10 April 9, 2009, which the IJ denied, finding it did not have jurisdiction. (*Id.* at Ex. B.) Petitioner again
11 requested a bond redetermination hearing on November 17, 2009, which the IJ denied on December
12 10, 2009. (*Id.* at Ex. C.) Petitioner appealed this decision to the BIA, which affirmed the IJ's ruling
13 on April 26, 2010. (*Id.* at Ex. D.)

14         On December 15, 2008, Petitioner moved to reopen the removal proceedings with the BIA
15 on the bases that the circumstances in El Salvador had changed and his immigration attorney was
16 ineffective in advising him not to proceed with a prior asylum application. (Return Ex. 14.)
17 Petitioner's motion to reopen was denied, as was his petition for review with the Ninth Circuit. (*Id.*
18 at Exs. 14, 15.) On July 16, 2010, Petitioner filed a second motion to reopen with the BIA, which was
19 also denied. (*Id.* at Ex. 16.) Petitioner also filed an additional petition for review with the Ninth
20 Circuit, arguing he was not deportable as charged because, based upon intervening case law, he did
21 not have an aggravated felony. (*Id.* Ex. 17.) Petitioner was granted a stay in this case. (*Id.*) On
22 November 12, 2010, Petitioner filed a third motion to reopen with the BIA, which was also denied.
23 (*Id.* at Ex. 18.) Petitioner filed a petition for review with the Ninth Circuit, which issued a temporary
24 stay of removal. (*Id.* at Ex. 19.) On February 14, 2011, Petitioner filed a fourth motion to reopen with
25 the BIA, which was also denied. (*Id.* at Ex. 20.) Petitioner again filed a petition for review with the
26 Ninth Circuit. (*Id.* at Ex. 21.)

27         Petitioner is currently in the custody of the Secretary of the Department of Homeland Security
28 and the Attorney General of the United States and is being detained at Respondents' detention facility

1 in Otay Mesa, California. (FAP at 1.) He filed a Petition for Writ of Habeas Corpus, a motion for leave to proceed *in forma pauperis* ("IFP"), and a motion for appointment of counsel on February 8, 2011. (Docs. 1-3.) The Court issued an Order granting Petitioner's motion for leave to proceed IFP and subsequently issued an Order granting Petitioner's motion for appointment of counsel and appointing Federal Defenders, Inc. to represent Petitioner. (Docs. 4, 7.) On April 25, 2011, the Court granted Petitioner's unopposed motion for leave to file the FAP. (Docs. 11-12.) Respondents filed a return to the FAP and Petitioner filed a traverse. (Docs. 14-15.)

## II.

## DISCUSSION

Petitioner argues he is entitled to a writ of habeas corpus because he has been unreasonably detained pending the outcome of his collateral challenges to his removal order and because he received a procedurally deficient bond hearing and is therefore being held in violation of his due process rights. As an initial matter, Petitioner argues he is entitled to a bond hearing at this stage of his proceedings and the IJ's denials of his motions for bond redetermination hearings for lack of jurisdiction were in error. In *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011), the Ninth Circuit extended its holding in *Casas-Castrillon v. DHS*, 535 F.3d 942 (9th Cir. 2008) – that individuals in discretionary immigration custody are entitled to a bond hearing before an IJ to determine the necessity of ongoing detention – to individuals with an administratively final order of removal, pending collateral challenges to the removal order, and a stay of removal in place. *Diouf*, 634 F.3d at 1085-88.[1] Petitioner's removal order became administratively final on July 28, 2008. He has a pending petition for review before the Ninth Circuit, which has issued a temporary stay of removal. Under these circumstances, the Court finds Petitioner is entitled to a bond hearing.

Petitioner argues the bond hearing he previously received was constitutionally deficient for

---

[1] Respondents argue, because the Government filed a petition for rehearing *en banc* challenging the Ninth Circuit's decision in *Diouf*, and because the mandate has not yet issued, the Court's holding in that case is not clearly binding law of the Circuit. However, as Defendants point out, the Ninth Circuit has previously held that, once a published opinion is filed, it becomes the law of the Circuit. *See Chambers v. United States*, 22 F.3d 939, 942 n.3 (9th Cir. 1994), *vacated on other grounds by* 47 F.3d 1015; *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000). Regardless of the binding finality of the Ninth Circuit's decision in *Diouf*, this Court is persuaded by the reasoning set forth in the decision and finds Petitioner is entitled to a bond hearing.

five reasons: (1) the IJ failed to articulate and apply the correct standard of proof; (2) the bond hearing was not contemporaneously recorded; (3) the IJ erroneously failed to apply the factors set forth in *In re Guerra*, 24 I. & N. Dec. 37 (B.I.A. 2006); (4) the IJ granted bond in an amount that was unreasonably high given Petitioner's individual circumstances; and (5) the IJ failed to provide appointed counsel. Respondents argue Petitioner has failed to administratively exhaust his claims; Petitioner cannot demonstrate prejudice as a result of his claims alleging the IJ failed to apply the appropriate burden of proof, the IJ set an inappropriately high bond amount, and the proceeding was not contemporaneously recorded; the Court lacks jurisdiction to review Petitioner's claim that the IJ failed to consider the *Guerra* factors; and Petitioner's claim regarding lack of appointed counsel fails.

**A.     Exhaustion**

Respondents argue this Court should dismiss the FAP without prejudice because Petitioner has not exhausted his administrative remedies with respect to his claims due to the fact that he did not administratively appeal his bond decision to the BIA. They cite to *Leonardo v. Crawford*, No. 09-17495, 2011 WL 3319433 (9th Cir. Aug. 3, 2011) in support of their argument. In that case, the Ninth Circuit held that an alien was required to exhaust his administrative remedies by appealing to the BIA before seeking habeas review of an IJ's bond determination. *Leonardo*, 2011 WL 3319433, at *1 ("Once an alien has received a *Casas* bond hearing before an immigration judge (IJ), he may appeal the IJ's decision to the [BIA]. If the alien is dissatisfied with the BIA's decision, he may then file a habeas petition in the district court, challenging his continued detention. . . . Because Leonardo did not follow this course here, and thus did not exhaust administrative remedies before pursuing habeas relief, we remand to the district court with instructions to dismiss his petition without prejudice."). However, the Court in *Leonardo* also recognized that the exhaustion requirement may, in some circumstances, be excused. *Id.* at *3; *see also Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir. 1987); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)("Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" (citation

omitted)). Here, although Petitioner did not appeal the determination in his bond hearing, he has made multiple requests for a bond redetermination hearing, all of which have been denied, and has attempted to reopen his removal proceedings on multiple occasions before both the BIA and the Ninth Circuit Court of Appeals. Although the Court recognizes that the prudential requirement that administrative remedies be exhausted prior to seeking habeas relief will generally apply to challenges to bond hearings, it finds that excuse of exhaustion is proper under the circumstances presented here and declines to exercise its discretion to dismiss the FAP for failure to exhaust.

## B. Standard of Proof

Respondents also argue Petitioner cannot demonstrate he was prejudiced by the IJ's alleged failure to apply the correct standard of proof. In *Casas*, the Court held "the prolonged detention of aliens is permissible only where the Attorney General finds such detention individually necessary by providing the alien with an adequate opportunity to contest the necessity of his detention." *Casas*, 535 F.3d at 951. The Court went on to state:

> [b]ecause the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,' we hold that § 1226(a) must be construed as *requiring* the Attorney General to provide the alien with such a hearing. Thus an alien is entitled to release on bond unless the 'government establishes he is a flight risk or will be a danger to the community.'

*Id.* (citations omitted)(emphasis in original). The Court in *Casas* did not state by what standard the Government must establish that an individual is a flight risk or will be a danger to the community. However, the Ninth Circuit recently held, in light of the liberty interest at stake, a heightened clear and convincing standard applies to bond hearings under *Casas*. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *see also Dela Cruz v. Napolitano*, 764 F. Supp. 2d 1197, 1201-02 (S.D. Cal. 2011)("The possibility of long-term discretionary detention clearly implicates an individual interest that is both particularly important and more substantial than the mere loss of money such that a heightened standard of proof should be placed upon the Government in a *Casas* hearing. . . . As the liberty interest at stake is freedom from civil detention, the Court finds the clear and convincing standard of proof appropriate.").

Here, Petitioner argues the IJ erred by failing to state that the Government bore the burden of

1  proof. Petitioner declares that the IJ heard from him first, indicating the IJ believed the burden was
2  on him to establish he was entitled to release on bond, rather than on the Government. (Cuatete-
3  Hernandez Decl. at ¶¶ 15-17.) Petitioner argues the IJ further erred by failing to require the
4  Government to present clear and convincing evidence that Petitioner was either a flight risk or a
5  danger to the community. (*Id.* at ¶ 21.) He claims the IJ's failure to hold the Government to the
6  heightened standard of proof likely affected the outcome of the bond proceeding because, under the
7  appropriate standard, the IJ likely would not have concluded that the evidence justified setting such
8  a high bond. According to Petitioner, because the Government has "steadfastly maintained that only
9  a preponderance standard at most applies to its burden at *Casas* hearings, and during the immediate
10 post-*Casas-Castrillon* period the IJs were invariably applying a preponderance standard (when they
11 placed the burden on the Government at all), it is plain that the clear and convincing standard was not
12 applied here." (FAP at 6.)

13 Respondents do not argue that the IJ applied the proper burden or standard of proof, but rather
14 argue Petitioner cannot show prejudice from the IJ's failure to do so in light of the fact that Petitioner
15 stipulated to the bond amount. The Court disagrees. In a bond hearing, the burden is on the
16 Government to establish the detainee poses a danger to society or is a flight risk by clear and
17 convincing evidence. If the Government fails to meet this burden, or acknowledges it is unable to do
18 so, the detainee is entitled to be released on bond. Accordingly, and in the context of the evidence
19 submitted to satisfy the applicable standard of proof, the IJ must determine the appropriate amount of
20 bond to permit such release, while still ensuring the detainee's appearance at any future hearings.
21 Here, there is evidence indicating the IJ did not apply the appropriate burden and standard of proof
22 to the Government, thereby denying Petitioner of a full and fair bond hearing, and that the bond
23 amount was arbitrarily determined. (*See* Cuatete-Hernandez Decl. ¶¶ 10, 18-20, 22.)[2]

---

[2] Petitioner declares the IJ did not ask him about his or his family's ability to pay a bond or about his financial circumstances and the DHS attorney did not present any arguments or evidence as to why a $25,000 bond was appropriate. (Cuatete-Hernandez Decl. ¶¶ 16, 18-19.) Petitioner states he consented to the bond amount because he was afraid he would be denied bond if he requested a lower amount. (*Id.* at ¶ 22.) Approximately three weeks later, when he realized he would be unable to pay the bond in this amount, he filed a motion for a bond redetermination hearing. (*Id.* at ¶ 23.) Petitioner has clearly been unable to post the $25,000 bond to date.

1     As the IJ did not articulate the standard to which the Government was required to establish
2 Petitioner constituted a danger to society or a flight risk, and therefore did not determine the
3 appropriate bond amount to be imposed in the context of such standard, the *Casas* bond hearing
4 provided to Petitioner did not provide him adequate due process of law and Petitioner has
5 demonstrated sufficient prejudice. Accordingly, the Petitioner is entitled to a new hearing before an
6 IJ, who shall apply the clear and convincing standard of proof in determining whether the Government
7 has met its burden under *Casas* and, if Petitioner is determined eligible for release on bond, in
8 determining the appropriate bond amount.

## III.

## CONCLUSION

11     For the foregoing reasons, Petitioner's writ of habeas corpus is granted. A conditional writ of
12 habeas corpus is issued and the Petitioner shall be released from custody unless he receives a new
13 hearing before an Immigration Judge consistent with this Order within thirty days after entry of this
14 Order, of which a contemporaneous record shall be made. Petitioner shall file a status report with the
15 Court within forty-five days after entry of this Order. The Court retains jurisdiction over this matter
16 to enforce the conditional writ of habeas corpus.

17     **IT IS SO ORDERED**.

18 DATED: August 22, 2011

                                          HON. DANA M. SABRAW
                                          United States District Judge